## EDWARDS v. GIBBS, JUDGE, USE, &c.

1. A suit cannot be maintained against an executor who has declared an es-
tate insolvent, upon his official bond, assigning as a breach, that he had
not made a full inventory of the assets.
2. The effect of the decree of insolvency, is to transfer to the orphans' court
the exclusive jurisdiction of all claims against the estate, and in that court,
on the final settlement, it may be shown that the administrator has with-
held or wasted the assets.   Whether equity might not afford relief in cer-
tain cases—*Quere.*

Error to the Circuit Court of Shelby.

DEBT by the defendant, against the plaintiff in error, on his
official bond, as executor of Vincent Jones, for the use of
Joseph Ellison.

After setting out the bond, and condition, the declaration
avers, that said Jones by his will directed all his debts to be
paid, and that he died on the .. day of ...., 1839, possessed
of a large personal estate of great value, to wit, of the value
of $6000, consisting, among other property, of the following

slaves, naming them, being more than sufficient to pay all the debts of the deceased. That the defendant proved the will, and took upon himself the burden of executing it.

He further saith, that said deceased, at the time of his death, was justly indebted to the said Joseph Ellison in the sum of six hundred dollars due by promissory note, dated 20th June, 1839, and payable at the time of his death, and that after the death of the said Jones, to wit, on, &c. the said Ellison commenced an action on said note against the defendant as executor, &c. in the circuit court of the county aforesaid.

The declaration contains three assignments of breaches:

1. That the defendant did not make and return to the clerk of the county court a full inventory of all the goods, &c. of the deceased, according to the statute, &c.

2. That he did not make and return to the clerk's office a full and complete inventory, in this, that he did not embrace in any inventory made and returned by him, the negro slaves aforesaid, or any of them.

3. That on the 15th February, 1841, he reported to the orphans' court, that the estate of his testator was insolvent, and unable to pay all the debts against the estate, when in truth and fact, it was not, as the defendant well knew, and afterwards, to wit, at, &c. pleaded the same to the further prosecution of the said action, by means whereof the said action was abated, as will appear, &c.

To this declaration the defendant demurred, and the court overruled the demurrer; and the defendant refusing to plead over, by agreement the damages were assessed at $912, for which a judgment was rendered.

PORTER, for plaintiff in error.

ORMOND, J.—There can be no doubt, that the failure of the executor to return a full and complete inventory of the estate of his testator, was a breach of the condition of his bond, which required him to perform all the duties which are, or may be required of him by law, of which this was one. But in our judgment, this action cannot be maintained under the facts disclosed by the declaration. It appears that the

defendant in error was prosecuting a suit against the plaintiff
in error, pending which, upon the representation of the plain-
tiff in error as executor, the orphans' court declared the estate
which he represented insolvent, and according to the law as
it then stood, the suit abated. This decree of the orphans'
court, cannot be thus collaterally called in question, although
at the time it was made, in February, 1841, it was an *ex
parte* proceeding, there being then no such provision as is
now made by the act of 1843, by which the creditors are al-
lowed to dispute the fact of the insolvency of the estate; yet
its effect, when made, was to transfer to the orphans' court
the exclusive jurisdiction of all claims against the estate. Its
effect was to abate all suits then pending against the personal
representative, and to require all creditors to present their
claims against the estate within a prescribed period. At the
final settlement, when the fund for distribution was ascer-
tained, it was divided amongst the creditors *pro rata*, if not
sufficient to satisfy them in full.

At the final settlement, if not previously, it was doubtless
competent for the creditors to contest the inventory filed by
the executor, and to increase the fund for distribution, by
showing either that he had withheld, or converted the assets
of the estate, or that they had been wasted or lost by his neg-
ligence. [Duffee v. Buchanan, and wife, 8 Ala. 27.] The
entire body of our statute law on this subject, contemplates
the final settlement of the estate in the orphans' court, and
this results necessarily from the fact, that with a few excep-
tions, all debts are placed upon the same footing, and when
the estate is insolvent, the fund for distribution is to be
equally divided amongst all the creditors. This settlement
when made, is conclusive in favor of the executor or admin-
istrator, and in the language of the statute, "shall not be
impeached except for fraud in obtaining the same." [Clay's
Dig. 304, § 37.]

Whether creditors, or others interested in the estate, might
not have relief in equity, when the executor or administra-
tor had withheld the assets, even after the settlement of the
estate, is a question we are not called on to consider. It is
clear that the decree of the orphans' court declaring an estate
insolvent, or its final decree, cannot be collaterally impeach-

ed, by a suit against the personal representative, for the recovery of a debt due from the estate.

The judgment will be reversed, and if desired, the cause will be remanded.