## WILSON *vs.* RANDALL AND WIFE.

[BILL IN EQUITY FOR INJUNCTION OF PROBATE DECREE.]

1. *What defenses administrator may make before probate court.*—If an administrator delivers to one of the distributees property bought by him at the administrator's sale, without taking his note for the purchase-money, under an agreement that the amount of the purchase-money shall be credited on his distributive share of the estate, this agreement is available to the administrator, on final settlement of his administration, before the probate court.

2. *Equitable relief against probate decree.*—A court of equity will not grant relief to an administrator, against a decree rendered by the probate court on final settlement of his accounts, by establishing a credit or set-off, which might have been allowed in the probate court, merely on the ground that he was prevented from asserting his defense before that court by the repeated promises and assurance of the distributees, "that they would do what was right in the matter."

APPEAL from the Chancery Court of Shelby.

Heard before the Hon. JAMES B. CLARK.

THE material facts of this case, as stated in the bill, are these: Benjamin G. Wilson, the complainant, was appointed by the probate court of said county, in December, 1852, administrator of the estate of his father, Benjamin Wilson, deceased; of which estate, Mrs. Nancy Randall, who was the sister of the complainant, (and who, with her husband, Benjamin F. Randall, was made a defendant to the bill,) was one of the distributees. In February, 1853, the complainant sold the personal property of said estate, under an order of sale granted by the probate court; and at this sale Randall and wife became the purchasers of property amounting to nearly $750, "under an agreement with complainant that said Nancy should obtain in this way, to the extent of the property so bid off, her distributive share of said estate." A few days after the sale, complainant delivered to said Nancy the property so bid off by her and her husband; "but, relying upon said agreement and understanding, and believing that she and her husband

would carry out the same in good faith, took from her no receipt, nor did he require of her any note for the value of said property." At several different times afterwards, "complainant called upon said Benjamin F. to settle with him, so as to furnish him with a voucher for said advancement to said Nancy, and was as often assured by said Benjamin F. that he would do what was right in the matter, and that complainant need not have any fear about it." In May, 1855, the complainant made a partial settlement with the probate court, in which he charged himself with the amount of the property delivered to Randall and wife, "and allowed himself charged in favor of said Nancy, with the sum of $432 64, as her distributive share of the personal assets, without interposing his claim for said advancement to her, relying upon the said agreement and understanding being carried out in good faith." In May, 1856, complainant made a final settlement with said probate court of his administration on said estate, "on which settlement, relying upon the defendants' oft-repeated assurances that they would do right in the matter, he permitted a decree to be rendered against him, in favor of said Benjamin F., for the use of said Nancy, for the sum of $489 76, without interposing his claim for said advancement." Complainant "was induced to deliver said property to said defendants, without requiring of them a note or other evidence therefor, by said agreement and understanding ; and was prevented from interposing said advancement as a defense on said settlement, and induced to permit said decrees to be rendered against him, by the defendants' repeated assurances that they would do what was right." The defendants afterwards repudiated their agreement, and sued out execution on the decree.

The prayer of the bill was, for an account, an injunction of the probate decree, a money decree for the balance which might be found due to the complainant, and general relief. The chancellor sustained a demurrer to the bill, for want of equity; and his decree is now assigned as error.

S. LEIPER, for appellant.
R. W. COBB, contra.

A. J. WALKER, C. J.—The agreement by the defend-ants, to allow the amount of purchases made by them from the complainant, as administrator, to be credited upon the distributive share of Mrs. Randall, was available to the complainant on the final settlement of his administration. He might, upon his final settlement, have set off the amount of such purchases against the claim of Mrs. Randall as a distributee.—*Carroll v. Moore,* 7 Ala. 615 ; *Moore v. Lesueur,* 33 Ala. 237.

[2.] Because the defendant could have made the defense before the probate court, he can not obtain relief in chancery against the decree, unless he was prevented from making his defense in the probate court on his settlement, "by fraud, accident, or the act of the opposite party, unmixed with fault or neglect on his part."—*Duckworth v. Duckworth's Adm'r,* 35 Ala. 70 ; *Hair v. Lowe,* 19 Ala. 224 ; *Powell v. Stewart,* 17 Ala. 719 ; *Foster v. State Bank, ib.* 672 ; *French v. Garner,* 7 Porter, 549 ; *Allman v. Owen,* 31 Ala. 167.

The allegations of the bill are insufficient to meet the requisitions of that rule. The promise of the defendants that the amount of their purchases should go in payment of the distributive share, and their repeated assurance that they would do what was right, made before the final settlement, could not evidence a procurement of the decree by fraud. Misrepresentations must be in a matter of substance, and must mislead the party, in order that they may constitute a fraud.—1 Story's Eq. Ju., § 191. Nothing in what was said by the defendants was calculated to induce the complainant to forego the assertion of his defense in the probate court, or could have misled him. All that was said and done, contributed to arm him with convenient evidence upon which to sustain his defense. The defendants' promise to do what was right, required them to allow the

·complainan.'s set-off before the probate court; and their failure to allow it, was calculated to awaken the utmost anxiety of the complainant to establish his defense, instead of misleading him into the quiet omission to bring it up. If the complainant, upon the reliance which he mentions, forbore to assert his defense, it was an act of the utmost negligence on his part—it was his own fault, and a court of chancery will not relieve him.

Decree affirmed.